UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
MAR 0 8 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-124-GWU

SARAH ROSE,                                                                    PLAINTIFF,

VS:                         MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT,

INTRODUCTION

Sarah Rose brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits. The case is before the Court on cross-motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

    1.     Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

    2.     Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

    3.     Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

    4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. <u>Id</u>. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

The Farris decision provides that a fairly liberal standard should be used in evaluating whether a claimant's impairment is severe. An impairment can be considered as not severe only if the impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." Farris, 773 F.2d 85, at 88.

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Rose, a 54 year-old former respiratory care practitioner with a high school education, did not suffer from a "severe" impairment. (Tr. 18, 23). Therefore, the plaintiff could not be considered totally disabled. (Tr. 23).

3

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The ALJ properly concluded that Rose did not suffer from a "severe" physical impairment. The record reveals long-standing complaints of right upper quadrant abdominal pain, but no physician of record has ever diagnosed the cause.

Rose was first hospitalized at Baptist Regional Hospital in March of 2001 with abdominal pain complaints. An EKG was negative. (Tr. 213). Abdominal x-rays were negative. (Tr. 213). A CT Scan of the abdomen revealed a hepatic cyst. (Tr. 213). Liver and pancreatic enzymes were normal. (Tr. 217). Gastroenteritis and H.pylori gastritic were suspected. (Tr. 215). Upon discharge, the patient was asymptomatic. (Tr. 217).

Rose was seen at Baptist Regional for follow-up on several occasions in the spring of 2001. In April, a CT Scan revealed no abnormalities with regard to the plaintiff's right kidney. (Tr. 227). In May, a small bowel follow through revealed nothing to account for the claimant's pain complaints. (Tr. 225).

In April of 2001, Dr. Michael Simmons performed an esophagogastroduodenoscopy with antral biopsy. This procedure revealed a small hiatal hernia with mild linear erosive esophagitis. (Tr. 235). The stomach and duodenum were normal. (Tr. 235). In May, the doctor performed a colonoscopy with biopsy polypectomy which resulted in an assessment of a diminutive polyp in the transverse colon, which was removed, and internal hemorrhoids. (Tr. 233). The rectum, colon and terminal ileum were all unremarkable. (Tr. 233). The only restriction indicated by Dr. Simmons was a

4

need to avoid aspirin for two weeks. (Tr. 234).

Rose was admitted to Jellico Community Hospital in June of 2001 with abdominal pain complaints under the care of Dr. Charles Wilkens. She underwent a diagnostic laparoscopy which revealed adhesions of the left lobe of the liver but no other abnormalities. (Tr. 270). The plaintiff underwent lysis of adhesions. (Tr. 270). A chest x-ray was normal. (Tr. 290). In July of 2001, a Hepatobiliary Scan at Jellico was normal as was a bone scan. (Tr. 287, 289).

Dr. Morris Beebe performed an ERCP and biliary sphincterotomy in September of 2001. (Tr. 244). Following these procedures, the patient developed pancreatitis in October of 2001. (Tr. 250). Dr. Beebe later noted that this condition had resolved by January, 2002. (Tr. 292). The doctor indicated that the cause of the claimant's abdominal pain remained undetermined at this time. (Tr. 293). Nevertheless, the physician opined that the plaintiff was unable to work due to her abdominal pain. (Tr. 292).

In March of 2002, Rose was seen by Dr. Thomas Greenlee. Dr. Greenlee obtained a CT Scan of the abdomen and pelvis which was noted to be normal with the exception of changes related to a previous cholecystectomy. (Tr. 315).

Rose began a course of treatment with Dr. Richard Lingreen in June of 2002. Dr. Lingreen noted that all of her various scans had been essentially normal. (Tr. 320). He prescribed low dose analgesics and valium. (Tr. 320). In May of 2003, the doctor noted her long-standing pain complaints and indicated that medical management had satisfactorily relieved her pain. (Tr. 493).

In October of 2002, Rose underwent a work-up at the Mayo Clinic of Jacksonville, Florida by Dr. Massimo Raimondo. Dr. Raimondo reviewed the plaintiff's history of mainly negative medical tests results. (Tr. 387). The doctor opined that the plaintiff might suffer from abdominal wall myalgia but prescribed

5

no functional restrictions. (Tr. 388).

Dr. Humilidad Anzures reviewed the record in July of 2002 and opined that the it did not reveal the existence of a "severe" physical impairment. (Tr. 402). This opinion was affirmed by Dr. Calixto Hernandez in November of 2002. (Tr. 419).

The ALJ's finding of no "severe" physical impairment appears well supported by the aforementioned medical evidence. Virtually all medical tests were within normal limits or involved conditions, such as the pancreatitis, which have resolved. Rose asserts that while she does not yet have a precise diagnosis for her abdominal problems, her long-standing pain complaints at least constitute a "severe" impairment which Dr. Beebe, a treating source, indicated would be totally disabling. However, the Court notes that his opinion is not well supported by substantial evidence because of all of the negative testing results. Dr. Lingreen, another treating source, indicated that the pain was under satisfactory control through medical management. The two medical reviewers each opined that a "severe" physical impairment had not been established. Therefore, the ALJ's findings in this area were supported by substantial evidence.

The ALJ also properly determined that Rose did not suffer from a "severe" mental problem. Dr. Kevin Eggerman was the only mental health professional to examine the plaintiff. Dr. Eggerman did not diagnose any mental problems, specifically noting "no diagnosis" in Axis I and Axis II of his report. (Tr. 335). The physician rated her Global Assessment of Functioning at 65 to 70, suggesting the existence of only "mild" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (4th Cir. 1994). Psychologists Edward Stodola (Tr. 405) and Jane

6

Brake (Tr. 420), the non-examining medical reviewers, each opined that the claimant did not suffer from a "severe" mental impairment. Finally, the plaintiff has not asserted that the ALJ's finding with regard to this issue was in error. Therefore, the ALJ dealt properly with the evidence of record relating to Rose's mental status.

Rose argues that the ALJ failed to follow the agency's own regulations by citing good reasons why the opinions of Dr. Beebe and Janey Phipps,[1] a nurse-partitioner, were not given controlling weight, as required by Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004). However, the ALJ did cite reasons why Dr. Beebe was not entitled to controlling weight including his essentially innocuous findings upon physical examination, the lack of clinical findings upon testing by the physician, and his inability to make even a diagnosis. (Tr. 20). The physician's opinion regarding the disabling nature of the plaintiff's pain was offset by the opinion of Dr. Lingreen indicating that the pain was being medically managed in a satisfactory manner. Under the federal regulations, Phipps was not an "acceptable medical source" whose opinion would be binding on the ALJ. 20 C.F.R. Section 404.1513. Thus, the ALJ was under no obligation to address her opinion. Therefore, the Court must reject the claimant's argument that the ALJ failed to follow the administration's procedural requirements.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be

---

[1] Phipps wrote a letter in February of 2003 stating that Rose was "totally unable to perform any job activities due to the constant pain that she suffers." (Tr. 452).

7

entered simultaneously consistent with this opinion.

This the ___8___ day of 2006.

                                                         *G. Wix Unthank*
                                                         G. WIX UNTHANK
                                                         SENIOR JUDGE